DA 08-0410

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 212

AMERIMONT, INC.,

       Plaintiff and Appellant,

   v.

FIDELITY NATIONAL TITLE INSURANCE
COMPANY; THE HERRICK CO.; MICHAEL
HERRICK,

       Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District,<br>In and For the County of Gallatin, Cause No. DV-2005-530<br>Honorable Mike Salvagni, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Robert K. Baldwin, Jim Barr Coleman, Goetz, Gallik & Baldwin, P.C.,
          Bozeman, Montana

      For Appellee:

          Steven W. Jennings, Crowley Fleck PLLP; Billings, Montana

                  Submitted on Briefs:  May 28, 2009

                            Decided:  June 23, 2009

Filed:

            _____
                       Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Amerimont, Inc., appeals the decision by the Eighteenth Judicial District Court of Gallatin County to grant Fidelity National Title Insurance Company's motion for summary judgment. We reverse and remand.

## ISSUE

¶2 While Amerimont raises two issues on appeal, the dispositive issue is whether the District Court erroneously granted summary judgment to Fidelity after ruling on a question of material fact.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 2003, Amerimont approached Allied Land Title, Inc.,[1] an agent for Fidelity National Title Insurance Company, seeking a title policy in the name of Monty Froehlich, a prospective buyer of Amerimont's property. Amerimont's president Thomas Langel claims that at that time, he told Michael Herrick that if Froehlich subsequently did not purchase the property, Amerimont wanted the policy in its name. In July 2003, Allied issued a commitment for title insurance naming Froehlich as the proposed insured. Later that month or the following month, the deal with Froehlich fell through. Langel testified that he cannot recall if he told Herrick again when he notified Herrick that the Froehlich deal was off that he wanted the title policy issued in Amerimont's name. In August 2003, Allied issued an amended commitment deleting Froehlich's name and putting "TBD" (to be determined) as the proposed insured. The amended commitment contained a clause

---

[1] In 2005, Allied became The Herrick Company. Michael Herrick was the owner of both Allied and The Herrick Company.

2

that stated: "This Commitment shall be effective only when the identity of the proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A hereof by [Fidelity], either at the time of the issuance of this Commitment or by subsequent endorsement." It also indicated an effective date of July 8, 2003 (the same effective date as the Froehlich commitment). Additionally, and unlike the Froehlich commitment, the amended commitment deleted the requirement that Fidelity approve issuance of the policy.

¶4    Allied sent the amended commitment to Amerimont. The commitment specified that the premium for the policy was $1,423. Along with the commitment, Allied sent a bill for $600 for title research. Shortly after receiving the commitment and title search bill, Amerimont sent full payment for both. Allied accepted and cashed both checks.

¶5    In the summer of 2004, Amerimont realized that it had not received a copy of the policy for its files. It contacted Allied and was told that the policy had not been issued and that Allied's file indicated that the property was not insurable. Allied had not notified Amerimont that it had not issued the policy nor had it returned to Amerimont the payments Amerimont had made.

¶6    In August 2005, Amerimont sued Fidelity and Allied (by then The Herrick Company), seeking a declaratory judgment compelling Fidelity to issue the policy, and damages arising from breach of contract and fraudulent conveyance. In December 2006, The Herrick Company repaid Amerimont the premium amount of $1,423, explaining that its acceptance and negotiation of Amerimont's 2003 premium payment had been an inadvertent error.

3

¶7 In 2007, Fidelity filed a motion for summary judgment claiming that no valid contract existed between the parties; therefore, it was entitled to summary judgment as a matter of law. Fidelity asserted that Allied withheld its consent to enter into a binding policy contract with Amerimont by listing "TBD" as the insured rather than naming Amerimont.

¶8 The District Court, in its order ruling in favor of Fidelity, relied on the language of the revised commitment which expressly provided that the commitment would be effective "only when the identity of the proposed Insured" replaced the "TBD" reference. The court determined that Amerimont accepted this offer as set forth in the Revised Commitment when it paid the premium, but it failed to contact Allied with instructions to change the name of the insured from "TBD" to Amerimont. The District Court pointed out that the offer did not state that Fidelity would insert as the named insured the name of the entity paying the premium.

¶9 The court held that consent is an essential element of a contract and that there was no mutual consent between the parties as to who was to be the named insured under this policy. The District Court ruled, therefore, that no valid contract existed and Fidelity was entitled to summary judgment as a matter of law.

¶10 Amerimont filed a timely appeal.

**STANDARD OF REVIEW**

¶11 We review a district court's grant of summary judgment de novo, and apply the same criteria applied by the district court pursuant to M. R. Civ. P. 56(c). A district court properly grants summary judgment only when no genuine issues of material fact exist,

4

and the moving party is entitled to judgment as a matter of law. *Pennaco Energy v. Bd. of Environmental Rev.*, 2008 MT 425, ¶ 17, 347 Mont. 415, 199 P.3d 191 (citation omitted).

**DISCUSSION**

¶12    *Did the District Court erroneously grant summary judgment to Fidelity after ruling on a question of material fact?*

¶13    On appeal, Amerimont argues that the evidence established the existence of a genuine issue of material fact—did Amerimont instruct Allied to issue the policy in Amerimont's name? Amerimont testified that it specifically told Allied that it wished to take out the title policy in its own name if the Froehlich deal fell though. Herrick, on the other hand, testified that Amerimont never told him that it wanted the policy issued in its name, but, rather that it "may want" to get an owner's policy. Herrick stated that he did not have the file in front of him at the time he spoke with Langel and gave no thought to whether a subsequent policy would be in Amerimont's name or the name of some other person or entity.

¶14    Amerimont also argued that placement of the name of the proposed insured into the policy was a condition precedent, and that Fidelity had a good-faith obligation to insert Amerimont's name when Amerimont notified it that it wished to be the named insured, and paid the policy premium.

¶15    Whether, and when, Amerimont instructed Allied to issue the title policy in Amerimont's name is a material fact that is disputed by the parties. While the District Court concluded that Allied did not consent to the contract because it provided a

5

commitment designating "TBD" as the proposed insured, Herrick's testimony unequivocally establishes that Allied and Amerimont disagree about whether Amerimont instructed Allied to name it as the insured. This is a factual dispute relative to Amerimont's breach of contract claim that precluded a resolution of this matter on summary judgment. Moreover, as argued by Amerimont, whether parties consent to a contract is also question of fact. *In re Marriage of Rolf*, 2000 MT 361, ¶ 26, 303 Mont. 349, 16 P.3d 345 ("[S]ince consent is an essential element of a contract, § 28-2-102, MCA, and consent is not mutual unless all the parties agree upon the same thing in the same sense, § 28-2-303, MCA, the extent and nature of the parties' consents . . . are questions of fact which must be first determined.").

¶16 It is well established that on a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant and the district court may not make factual findings or resolve factual disputes at the summary judgment stage. *Dovey v. BNSF Ry. Co.*, 2008 MT 350, ¶ 20, 346 Mont. 305, 195 P.3d 1223. Amerimont raised a genuine issue of material fact and the District Court erred by granting Fidelity's motion for summary judgment.

## CONCLUSION

¶17 For the foregoing reasons, we reverse and remand to the District Court for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

6

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS